33 N.Y.2d 425 (1974)
In the Matter of the Arbitration between W. M. Girvan, Inc., Appellant, and Nicholas M. Robilotto, as President of Local 294, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Respondent.
Court of Appeals of the State of New York.
Argued January 17, 1974.
Decided February 22, 1974.
Kohn, Bookstein & Karp (Richard A. Kohn of counsel), for appellant.
Dominick Tocci for respondent.
Chief Judge BREITEL and Judges GABRIELLI, JONES, WACHTLER and RABIN concur in memorandum; Judge JASEN dissents and votes to reverse in a separate opinion in which Judge STEVENS concurs.
*427 MEMORANDUM.
The order of the Appellate Division is affirmed, without costs, in the following memorandum:
The burden of appellant employer's contention is that the arbitrator here should have upheld the dismissal of two employees on the ground that their conduct constituted "dishonesty involving theft". We conclude that the employer's application to vacate the arbitration award (which, while it set aside the dismissals, did impose periods of suspension without pay) has been properly denied.
The arbitration clause here is very broad. It embraces "[g]rievances [not otherwise defined or limited] which cannot be settled between the parties", and may be invoked "[w]here an employee has reason to believe that any provision of this Agreement has not been complied with by the Company."
The employer dismissed the two employees in consequence of their having been observed transferring merchandise from the employer's delivery truck to a station wagon owned by one of them. When the union protested the dismissals, the parties waived arbitration before a grievance committee (as contemplated in the agreement between them) and proceeded before a single arbitrator. Their submission raised only the issues:  "Was there just cause for the discharge of [the employees]?" and "To what relief or remedy, if any, are the parties entitled?"
The applicable substantive provision of the agreement between the employer and the union is as follows: "The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice, in writing, of the complaint against such employee to the employee and a copy of the same to the Union and the job steward. No warning notice need be given 1) if an employee is discharged for dishonesty involving theft or 2) *428 drunkenness on the job or 3)" etc. (Emphasis added.) The arbitrator determined on the evidence presented to him that "just cause" for discharge was not established. We find no basis for judicial disturbance of that conclusion.
The question whether conduct of an employee involves "dishonesty for theft" would have been relevant only to a determination, if that had been needed, that the employer was relieved of its obligation to give a warning notice. Whether there was a basis for discharge or suspension in the first place turns on whether there was "just cause" therefor, a very broad standard indeed. It was this latter issue which was resolved by the arbitrator.
Only the employer has appealed and no issue has been raised by the union (nor do we now introduce it) that the employer should have given a warning notice to these employees. The question whether the employer should have given the employees a warning notice was never submitted to the arbitrator. Accordingly he was never called on to determine whether in the circumstances of this case the conduct of these two employees should properly be characterized as "dishonesty involving theft" within the meaning of those words as used in the agreement.
JASEN, J. (dissenting).
I would reverse and vacate the award.
The conduct which brought into being the company's right to discharge the two employees involved in this proceeding was "dishonesty involving theft", as set forth in article XVI-a of the company-union agreement. The arbitrator, in making his decision, was bound by the terms of this agreement and had "no right to alter, amend, or otherwise deviate from the provisions of [the] Agreement." (Art. XIX, subd. F.) Hence, the arbitrator's role was a limited one  to determine from the facts and circumstances whether the acts of the employees as set forth hereinafter, constituted "dishonesty involving theft", justifying dismissal without notice.
The arbitrator found that the conduct of the employees  in surreptitiously removing certain boxes from a company truck and placing them in a car owned by one of them  "did give rise to a valid suspicion that something was amiss and that they had been doing things inconsistent with their job responsibilities *429 and obligations." He went on to say, "[a]lthough I am affording them reinstatement, I am putting them on notice that similar activities in the future may not bring a similar result."
I am in accord with the view of the dissenters below that "[t]o arrive at this result the arbitrator went beyond the terms of the agreement and the obvious intentions of the parties to that agreement. He required the employer to establish a corpus delicti (to prove that clams were in the boxes in question) and to show that these items were specifically reported as missing by the customer (apparently referring to past shortages), and in doing so he substituted his own notion of `proven theft' for the agreed words `dishonesty involving theft'. In this respect he rewrote the agreement (Steelworkers v. Enterprise Corp. [363 U. S. 593, 598])."
In addition, the arbitrator, in imposing a period of suspension of the employees for their conduct, in place of dismissal, deviated from the provisions of the agreement and exceeded his limited role as arbitrator.
When an arbitrator, whose powers to adjudicate a controversy are limited by an agreement, disregards the provisions of the agreement and substitutes his own terms, the decision should be vacated.
Order affirmed.